**United States District Court**
**Middle District of Florida**
**Orlando Division**

ORL, LLC, BLUE HERON BEACH
RESORT DEVELOPER, LLC, FRED W.
SCHINZ, JOHN T. CHAIN, JR., J. RON
ROGERS, LES W. BURKE,

                      **Plaintiffs,**

-vs-                                                      Case No.  6:11-cv-562-Orl-19DAB

HANCOCK BANK a Mississippi
corporation, as assignee of & successor in
interest to Peoples First Community Bank,
FSB, a Florida corporation,

                        **Defendant.**

_____

# ORDER

This case comes before the Court on the following:

1.    Motion to Strike Plaintiffs' Demand for Jury Trial by Hancock Bank (Doc. No. 3, filed Apr. 6, 2011);

2.    Motion to Dismiss Complaint with Prejudice and Supporting Memorandum of Law by Hancock Bank (Doc. No. 4, filed Apr. 6, 2011);

3.    Memorandum of Law in Opposition to Motion to Dismiss by ORL, LLC, Blue Heron Beach Resort Developer, LLC, Fred W. Schinz, John T. Chain, Jr., J. Ron Rogers, and Les W. Burke (Doc. No. 19, filed Apr. 28, 2011);

4.    Unopposed Request for Oral Argument on Defendant's Motion to Dismiss Complaint with Prejudice and Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss by ORL,

       LLC, Blue Heron Beach Resort Developer, LLC, Fred W. Schinz, John T. Chain, Jr., J. Ron Rogers, and Les W. Burke (Doc. No. 20, filed Apr. 28, 2011);

5. Memorandum of Law in Opposition to Hancock Bank's Motion to Strike Plaintiffs' Demand for Jury Trial by ORL, LLC, Blue Heron Beach Resort Developer, LLC, Fred W. Schinz, John T. Chain, Jr., J. Ron Rogers, and Les W. Burke (Doc. No. 21, filed Apr. 28, 2011);

6. Unopposed Request for Oral Argument on Defendant's Motion to Strike Plaintiffs' Demand for Jury Trial and Plaintiffs' Memorandum of Law in Opposition to Hancock Bank's Motion to Strike Plaintiffs' Demand for Jury Trial by ORL, LLC, Blue Heron Beach Resort Developer, LLC, Fred W. Schinz, John T. Chain, Jr., J. Ron Rogers, and Les W. Burke (Doc. No. 22, filed Apr. 28, 2011);

7. Motion for Leave to File Reply Memorandum to Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss Complaint with Prejudice by Hancock Bank (Doc. No. 24, filed May 6, 2011); and

8. Response to Defendant's Motion for Leave to File Reply Memorandum by ORL, LLC, Blue Heron Beach Resort Developer, LLC, Fred W. Schinz, John T. Chain, Jr., J. Ron Rogers, and Les W. Burke (Doc. No. 25, filed May 20, 2011).

## Background

### I. Factual Allegations[1]

On January 31, 2001, ORL, LLC ("ORL") entered into a $3,322,000.00 real estate promissory note, mortgage, and security agreement ("ORL Loan") with Peoples First Community Bank, FSB ("Peoples First"). (Doc. No. 2 ¶¶ 12-14.) ORL used the proceeds of the loan to purchase a five-acre

---

[1] The facts presented in this Order are derived from the allegations of the Complaint. These facts are included only to provide context and should not be construed as findings of fact.

parcel of land in Orlando, Florida, where a portion of a resort was to be built. (*Id*. ¶ 13.) Also on January 31, 2001, Fred W. Schinz, John T. Chain, Jr., J. Ron Rogers, and Les W. Burke (collectively "Guarantors") entered into a guaranty agreement relating to the ORL Loan. (*Id*. ¶ 15.) Over the next two years, ORL and the Guarantors entered various renewal notes, mortgage modifications, and amended guaranties with Peoples First relating to the ORL Loan. (*Id*. ¶¶ 16-19.)

On August 28, 2003, Peoples First assigned the ORL Loan to Colonial Bank ("Colonial"). (*Id*. ¶ 20.) That same day Colonial agreed to loan ORL an additional $678,000.00. (*Id*. ¶ 21.) Thereafter, ORL and Colonial entered into various mortgage modifications and amended loan agreements relating to the ORL Loan. (*Id*. ¶¶ 21-23.)

On September 26, 2005, Blue Heron Beach Resort Developer, LLC ("Blue Heron") entered into a construction loan agreement and mortgage with Colonial ("Blue Heron Loan"). (*Id*. ¶¶ 33, 36.) Under the construction loan agreement, Colonial agreed to lend Blue Heron $20,000,000.00 for the construction of a resort on the land financed by the ORL Loan. (*Id*. ¶¶ 33-34.)

Beginning in 2006, Fred Schinz told Colonial that both ORL and Blue Heron needed Colonial to convert their respective loans to a longer term with interest only payments. (*Id*. ¶ 42.) Colonial continuously and regularly represented and promised to ORL, through numerous telephone conferences and in-person meetings, that it would convert both loans to long term loans. (*Id*. ¶ 43.) Specifically, Colonial represented that the loans would be interest only, amortized over twenty-five years, with a balloon payment due in five years. (*Id*. ¶¶ 43-47.)

In 2007, Colonial informed ORL that it would not extend either the ORL or Blue Heron Loans. (*Id*. ¶ 51.) Colonial demanded that ORL find a bank to purchase the ORL Loan. (*Id*.) On April 16, 2008, Colonial assigned the ORL Loan to Peoples First. (*Id*. ¶ 54.) As a result of the assignment,

ORL entered into a renewal real estate promissory note with Peoples First for the ORL Loan that provided for a fifteen year amortization with a balloon payment due in three years.  (*Id*. ¶¶ 55-56.)

On April 30, 2008, Blue Heron executed a renewal mortgage note for the Blue Heron Loan with Colonial, which provided Blue Heron with a two year extension.  (*Id*. ¶¶ 58-59.)  In April of 2009, Blue Heron and Colonial entered into yet another loan modification agreement, reducing the interest rate and adjusting the payment terms of the Blue Heron Loan ("April 2009 Agreement").  (*Id*. ¶¶ 61-63.)  The April 2009 Agreement contained provisions requiring Colonial and Blue Heron to negotiate in good faith for an extension of the loan and a revised release schedule.  (*Id*. ¶¶ 64-66.)  On July 16, 2009, Colonial agreed to provide end user financing for Blue Heron condominium units ("July 2009 Agreement").  (*Id*. ¶ 70.)

On August 14, 2009, Colonial failed and was taken over by the Federal Deposit Insurance Corporation ("FDIC").  (*Id*. ¶ 75.)  That same day the FDIC and Branch Banking and Trust Company ("BB&T") entered into a Purchase and Assumption Agreement under which BB&T assumed all rights and obligations to the Blue Heron Loan.  (*Id*.)

On December 18, 2009, Peoples First failed and was also taken over by the FDIC.  The FDIC and Hancock subsequently entered into a Purchase and Assumption Agreement under which Hancock assumed all rights and obligations to the ORL Loan.  (*Id*. ¶ 76.)

**II.  Procedural History**

On February 23, 2011, ORL, Blue Heron, Fred W. Schinz, John T. Chain, Jr., J. Ron Rogers, and Les W. Burke, (collectively "Plaintiffs"), filed a seven-count Complaint against Hancock in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida.  (Doc. No. 2, filed Apr. 6, 2011.)  Count I of the Complaint asserts that Colonial breached the July 2009 Agreement by failing

to provide end user financing to buyers of Blue Heron condominium units. (*Id*. ¶¶ 83-84.) Count I further alleges that Hancock, as Peoples First's successor, is liable for Colonial's material breach of the July 2009 Agreement because the breach was committed within the scope of a joint venture between Peoples First and Colonial.[2] (*Id*. ¶ 87.) Count II of the Complaint contends that Colonial breached the April 2009 Agreement by failing to enter into the requisite good faith negotiations with Blue Heron. (*Id.* ¶¶ 88-94.) As in Count I, Count II alleges that Hancock, as Peoples First's successor, is liable for Colonial's material breach because the breach was committed within the scope of a joint venture between Peoples First and Colonial. (*Id*. ¶ 96.) Counts III and IV assert that Colonial fraudulently or negligently misrepresented its intentions to comply with the terms of the April 2009 Agreement and that Hancock is responsible for Colonial's misrepresentations under the joint venture theory. (*Id*. ¶¶ 97-116.) Counts V and VI allege that Colonial fraudulently or negligently misrepresented its intentions to comply with the terms of the July 2009 Agreement and that Hancock is responsible for Colonial's misrepresentations under the joint venture theory. (*Id*. ¶¶ 117-133.) Count VII seeks declaratory relief in light of Colonial's material breach of the April and July 2009 Agreements. (*Id*. ¶¶ 134-140.)

Hancock removed the case to the United States Court for the Middle District of Florida on April 6, 2011. (Doc. No. 1.) That same day, Hancock filed a Motion to Strike Plaintiffs' Demand for Jury Trial and a Motion to Dismiss. (Doc. Nos. 3, 4.) Plaintiffs responded in opposition on April 28, 2011. (Doc. Nos. 19, 21.)

---

[2] Specifically, Plaintiffs allege that "Hancock is liable for all wrongs suffered by ORL and Blue Heron relating to the ORL Loan and the Blue Heron Loan. As stated, Colonial and Peoples First were joint venturers for the purpose of profiting from interest payments from Blue Heron Resort loans. Colonial's aforementioned breaches of contract and torts were committed within the scope of that purpose, making Peoples First and the its successor, Hancock, liable for such wrongs." (Doc. No. 2 ¶ 77.)

**Standard of Review**

When ruling on a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). In determining the merits of the motion, a court must "accept all factual allegations in the complaint as true." *Tellabs, Inc.*, 551 U.S. at 323. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "'state a claim to relief that is plausible on its face.'" *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted). As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 1949 (quotation marks and internal citations omitted) (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible. *Id.* at 1950-51.

**Analysis**

Hancock contends that all seven counts of the Complaint should be dismissed because Hancock, as assignee of the FDIC as receiver, is entitled to protection from unrecorded arrangements, including the alleged joint venture between Peoples First and Colonial, under the "*D'Oench* doctrine" and 12 U.S.C. § 1823(e). In response, Plaintiffs contend that (1) the *D'Oench* doctrine does not bar the present claims because the allegations of the Complaint reasonably suggest that the Blue Heron Loan documents are in Hancock's records, and (2) the Purchase and Assumption Agreement between the FDIC and Hancock waived the protections of the *D'Oench* doctrine.

In *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1942), the Supreme Court held that the FDIC's interest in an asset acquired from a failed bank could not be diminished by alleged "agreements" not disclosed in the failed bank's records. *Id*. at 450. The Eleventh Circuit has described the holding in *D'Oench*, referred to as the "*D'Oench* doctrine" in these terms:

> In a suit over the enforcement of an agreement originally executed between an insured depository institution and a private party, a private party may not enforce against a federal deposit insurer any obligation not specifically memorialized in a written document such that the agency would be aware of the obligation when conducting an examination of the institution's records.

*Baumann v. Savers Fed. Sav. & Loan Ass'n*, 934 F.2d 1506, 1515 (11th Cir. 1991). The *D'Oench* doctrine has been expanded to protect entities to whom the FDIC, acting in its capacity as receiver

of failed banks, has transferred assets formerly belonging to the failed bank.[3] *Victor Hotel Corp. v. FCA Mortgage Corp.*, 928 F.2d 1077, 1083 (11th Cir. 1991). The purpose of "*D'Oench* and its progeny [is to] enable the FDIC, and the banks that acquire insolvent banks' assets from the FDIC, to make quick and accurate appraisals of the value of insolvent banks' assets by protecting the FDIC and its transferees against undisclosed agreements that would unexpectedly diminish the value of those assets."[4] *First Union Nat'l Bank of Fla. v. Hall*, 123 F.3d 1374, 1378-79 (11th Cir. 1997).

In the present case, Plaintiffs have not alleged that a written agreement specifically memorialized a joint venture between Peoples First and Colonial. Thus, if the *D'Oench* doctrine applies, it will operate to bar Plaintiffs' claims against Hancock, as successor-in-interest to Peoples First, because each of Plaintiffs' claims against Hancock relies on the existence of a joint venture between Peoples First and Colonial. However, Plaintiffs argue that the *D'Oench* doctrine does not apply to its claim against Hancock because the allegations of the Complaint "at least reasonably

---

[3] In *Victor Hotel*, the Eleventh Circuit held that the *D'Oench* doctrine barred a debtor from asserting claims and defenses against a wholly-owned subsidiary of a failed thrift, where that subsidiary had been transferred to a second thrift by the Federal Savings and Loan Insurance Corporation, affirming the district court's holding that the second thrift, as successor-in-interest to the failed thrift, was protected by the *D'Oench* doctrine. *Victor Hotel*, 928 F.2d at 1083.

[4] The *D'Oench* doctrine was largely codified by 12 U.S.C. § 1823, which provides:

No agreement which tends to diminish or defeat the interests of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, . . . shall be valid against the [FDIC] unless such agreement is (A) in writing; (B) executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository; (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee: and (D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e)(1).

suggest that the Blue Heron Loan documents were in Peoples First's (and now Hancock's) files," and the presence of these documents in Hancock's files would provide evidence of a joint agreement between Peoples First and Colonial. (Doc. No. 19 at 10.) Plaintiffs additionally argue that the Purchase and Assumption Agreement between Hancock and the FDIC expressly waived the protections of the *D'Oench* doctrine by exposing Hancock to any liabilities "relating to" Peoples First's records, including the alleged joint venture agreement. (*Id*. at 11.)

Hancock, as assignee of the FDIC as receiver, is protected from unrecorded agreements under the *D'Oench* doctrine. *See Victor Hotel*, 928 F.2d at 1083. Thus, even if Hancock's files contain a copy of the Blue Heron Loan documents as suggested by Plaintiffs, Plaintiffs' claims are nonetheless subject to dismissal under the *D'Oench* doctrine because the Complaint does not allege the existence of a written agreement between Peoples First and Colonial establishing the joint venture relationship. *See Murphy v. Federal Deposit Ins. Corp.*, 208 F.3d 959, 969 (11th Cir. 2000) (dismissing the compliant under the *D'Oench* doctrine where the plaintiff failed to allege the existence of a written agreement between the parties establishing their joint venture relationship); *Savers Fed. Savings & Loan Assn. v. Amberley Huntsville, Ltd.*, 934 F.2d 1201, 1206-07 (11th Cir. 1991) (*D'Oench* doctrine and § 1823(e) barred defenses and arguments relating to duties owed by the bank as a partner where the existence of the partnership was not reflected in the loan documents); *Federal Sav. & Loan Ins. Corp. v. Two Rivers Assocs., Inc.*, 880 F.2d 1267, 1271-77 (11th Cir. 1989) (counterclaim for breach of fiduciary duty by a joint venturer barred by the *D'Oench* doctrine).

Next, relying exclusively on *Refrigeration Supply, Inc. v. Fed. Deposit Ins. Corp.*, 953 F.2d 975 (5th Cir. 1992), Plaintiffs argue that the Purchase and Assumption Agreement between the FDIC and Hancock expressly waived the protections of the *D'Oench* doctrine. In support of this contention,

Plaintiffs cite Section 2.1(h) of the agreement, which states that the liabilities assumed by Hancock involve "duties and obligations assumed pursuant to this Agreement including without limitation those relating to [Peoples First's] Records, credit card business, overdraft protection plans, safe deposit business, safekeeping business or trust business, if any." (Doc. No. 1-5 at 12-13.) Plaintiffs maintain that each of its claims against Hancock involving the ORL and Blue Heron Loans are "relating" to Peoples First's records because discovery may reveal that copies of the Blue Heron Loan documents were in Peoples First's (and now Hancock's) records.

In *Refrigeration Supply*, the Fifth Circuit found the plaintiff's "most appealing" argument to be that the defendant had waived any *D'Oench* doctrine defenses in its purchase and assumption agreement from the FDIC, which provided that the defendant bank would assume liabilities for claims certified by the reciever to be valid and enforceable obligations, "whether or not they are reflected on the books of the Failed Bank as of Bank Closing." 953 F.2d at 983-84. The plaintiff's particular claims were not, however, certified by the Reciever. Thus, the claims fell outside the express waiver and were barred by the *D'Oench* doctrine. *Id*. at 984.

In the present case, no provision of the Purchase and Assumption Agreement states that Hancock agreed to assume any liabilities that were not reflected in the written records of Peoples First. While Section 2.1(h) confirmed that the liabilities assumed by Hancock involve "duties and obligations assumed pursuant to this Agreement including without limitation those relating to [Peoples First's] Records," Section 2.1(h) does not set forth that Hancock assumed duties and obligations not recorded in a written record in contravention of the *D'Oench* doctrine. Thus, it cannot be said that the Purchase and Assumption Agreement expressly or impliedly waived the protections of the *D'Oench* doctrine. Accordingly, the *D'Oench* doctrine operates to protect Hancock from

agreements not specifically memorialized in a written document of which the FDIC would have been aware when conducting an examination of Peoples First's records.

In summary, each of Plaintiffs' claims against Hancock relies on the existence of a joint venture between Peoples First and Colonial. However, the Complaint fails to allege the existence of a written document memorializing a joint venture agreement between Peoples First and Colonial. Accordingly, Plaintiffs' claim are barred by the *D'Oench* doctrine.

## Conclusion

Based on the foregoing, the Motion to Dismiss Complaint with Prejudice and Supporting Memorandum of Law by Hancock Bank (Doc. No. 4, filed Apr. 6, 2011) is **GRANTED IN PART**. The Motion to Dismiss Complaint is **GRANTED**. However, Plaintiffs shall be given leave to file within ten (10) days from the date below an amended complaint in accordance with this Order and with the provisions of Federal Rule of Civil Procedure 11(b) in order to afford them the opportunity to allege, if such document exists, the existence of a joint venture specifically memorialized in a written document such that the FDIC would be aware of the obligation when conducting an examination of Peoples First's records. The following motions are **DENIED AS MOOT**:

1. Motion to Strike Plaintiffs' Demand for Jury Trial by Hancock Bank (Doc. No. 3, filed Apr. 6, 2011);

2. Unopposed Request for Oral Argument on Defendant's Motion to Dismiss Complaint with Prejudice by ORL, LLC, Blue Heron Beach Resort Developer, LLC, Fred W. Schinz, John T. Chain, Jr., J. Ron Rogers, and Les W. Burke (Doc. No. 20, filed Apr. 28, 2011);

3. Unopposed Request for Oral Argument on Defendant's Motion to Strike Plaintiffs' Demand for Jury Trial by ORL, LLC, Blue Heron Beach Resort Developer, LLC, Fred W. Schinz, John T. Chain, Jr., J. Ron Rogers, and Les W. Burke (Doc. No. 22, filed Apr. 28, 2011); and

4. Motion for Leave to File Reply Memorandum to Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss Complaint with Prejudice by Hancock Bank (Doc. No. 24, filed May 6, 2011).

**DONE** and **ORDERED** in Chambers in Orlando, Florida on May 27, 2011.

*/s/ Patricia C. Fawsett*
PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record
Unrepresented Party