**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**ORL, LLC, BLUE HERON BEACH
RESORT DEVELOPER, LLC, FRED W.
SCHINZ, JOHN T. CHAIN, JR., J. RON
ROGERS, LES W. BURKE,**

          **Plaintiffs,**

**-vs-**                                                  **Case No. 6:11-cv-562-Orl-19DAB**

**HANCOCK BANK a Mississippi
corporation, as assignee of & successor in
interest to Peoples First Community Bank,
FSB, a Florida corporation,**

          **Defendant.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** **MOTION FOR ATTORNEY FEES (Doc. No. 39)**
>
> **FILED:** July 22, 2011
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

*Background*

The instant motion presents with a fairly complex factual and procedural history. Plaintiffs, ORL, LLC ("ORL"), Blue Heron Beach Resort Developer, LLC ("Blue Heron"), and Fred W. Schinz, John T. Chain, Jr., J. Ron Rogers, and Les W. Burke (collectively, the "Guarantors"), filed a seven (7) count Complaint against Defendant Hancock Bank ("Hancock") in state court (Doc. No. 2), and

Hancock removed it to this Court (Doc. No. 1). The pertinent allegations of the Complaint have been summarized by the District Court in prior Order (Doc. No. 26), and the Court takes them to be true, for present purposes only. According to the Complaint:

On January 31, 2001, ORL entered into a $3,322,000.00 real estate promissory note, mortgage, and security agreement ("ORL Loan") with Peoples First Community Bank, FSB ("Peoples First"). (Doc. No. 2 ¶¶ 12-14.) ORL used the proceeds of the loan to purchase a five-acre parcel of land in Orlando, Florida, where a portion of a resort was to be built. (*Id*. ¶ 13.) Also on January 31, 2001, the Guarantors entered into a guaranty agreement relating to the ORL Loan. (*Id*. ¶ 15.) Over the next two years, ORL and the Guarantors entered various renewal notes, mortgage modifications, and amended guaranties with Peoples First relating to the ORL Loan. *(Id.* ¶¶ 16-19.)

On August 28, 2003, Peoples First assigned the ORL Loan to Colonial Bank ("Colonial"). (*Id.* ¶ 20.) That same day Colonial agreed to loan ORL an additional $678,000.00. (*Id*. ¶ 21.) Thereafter, ORL and Colonial entered into various mortgage modifications and amended loan agreements relating to the ORL Loan. (*Id.* ¶¶ 21-23.)

On September 26, 2005, Blue Heron entered into a construction loan agreement and mortgage with Colonial ("Blue Heron Loan"). (*Id*. ¶¶ 33, 36.) Under the construction loan agreement, Colonial agreed to lend Blue Heron $20,000,000.00 for the construction of a resort on the land financed by the ORL Loan. *(Id*. ¶¶ 33-34.)

Beginning in 2006, Fred Schinz told Colonial that both ORL and Blue Heron needed Colonial to convert their respective loans to a longer term with interest only payments. (*Id*. ¶ 42.) Colonial continuously and regularly represented and promised to ORL, through numerous telephone conferences and in-person meetings, that it would convert both loans to long term loans. *(Id*. ¶ 43.) Specifically, Colonial represented that the loans would be interest only, amortized over twenty-five

years, with a balloon payment due in five years. (*Id*. ¶¶ 43-47.)

In 2007, Colonial informed ORL that it would not extend either the ORL or Blue Heron Loans. (*Id*. ¶ 51.) Colonial demanded that ORL find a bank to purchase the ORL Loan. (*Id*.) On April 16, 2008, Colonial assigned the ORL Loan to Peoples First. (*Id.* ¶ 54.) As a result of the assignment, ORL entered into a renewal real estate promissory note with Peoples First for the ORL Loan that provided for a fifteen year amortization with a balloon payment due in three years. (*Id.* ¶¶ 55-56.)

On April 30, 2008, Blue Heron executed a renewal mortgage note for the Blue Heron Loan with Colonial, which provided Blue Heron with a two year extension. (*Id.* ¶¶ 58-59.) In April of 2009, Blue Heron and Colonial entered into yet another loan modification agreement, reducing the interest rate and adjusting the payment terms of the Blue Heron Loan ("April 2009 Agreement"). (*Id.*¶¶ 61-63.) The April 2009 Agreement contained provisions requiring Colonial and Blue Heron to negotiate in good faith for an extension of the loan and a revised release schedule. (*Id*. ¶¶ 64-66.) On July 16, 2009, Colonial agreed to provide end user financing for Blue Heron condominium units ("July 2009 Agreement"). *(Id*. ¶ 70.)

On August 14, 2009, Colonial failed and was taken over by the Federal Deposit Insurance Corporation ("FDIC"). (*Id*. ¶ 75.) That same day, the FDIC and Branch Banking and Trust Company ("BB&T") entered into a Purchase and Assumption Agreement under which BB&T assumed all rights and obligations to the Blue Heron Loan. (*Id*.) On December 18, 2009, Peoples First failed and was also taken over by the FDIC. The FDIC and Hancock subsequently entered into a Purchase and Assumption Agreement under which Hancock assumed all rights and obligations to the ORL Loan. (*Id*. ¶ 76.)

Plaintiffs asserted that Colonial made several misrepresentations and breaches of contract with respect to the parties' dealings and sued Hancock, claiming: "Hancock is liable for all wrongs

suffered by ORL and Blue Heron relating to the ORL Loan and the Blue Heron Loan. As stated, Colonial and Peoples First were joint venturers for the purpose of profiting from interest payments from Blue Heron Resort loans. Colonial's aforementioned breaches of contract and torts were committed within the scope of that purpose, making Peoples First and then its successor, Hancock, liable for such wrongs." (Doc. No. 2 ¶ 77.)

*The Course of the Proceedings*

Following removal, Hancock moved to dismiss the Complaint with prejudice (Doc. No. 4). The District Court granted the motion, in part, finding:

> In summary, each of Plaintiffs' claims against Hancock relies on the existence of a joint venture between Peoples First and Colonial. However, the Complaint fails to allege the existence of a written document memorializing a joint venture agreement between Peoples First and Colonial. Accordingly, Plaintiffs' claim are barred by the *D'Oench* doctrine.[1]

(Doc. No. 26 at11). Although the Complaint was dismissed, Plaintiffs were given leave to file an amended complaint "in order to afford them the opportunity to allege, if such document exists, the existence of a joint venture specifically memorialized in a written document such that the FDIC would be aware of the obligation when conducting an examination of Peoples First's records." *Id.*

Plaintiffs filed a Motion for Enlargement of Time to file the Amended Complaint (Doc. No. 27), seeking permission to conduct discovery first. Thereafter, Plaintiffs filed a Motion for Permission to File an attached Amended Complaint, "if this Court does not grant the enlargement" (Doc. No. 28). On June 20, 2011, the Court entered an Order denying Plaintiffs' Motion for Enlargement of Time and granting Plaintiffs' Motion for Permission to File the Attached Amended Complaint (Doc. No. 31). In denying the Motion for Enlargement of Time, the Court noted: "A pre-suit investigation by

---

[1]In *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447 (1942), the Supreme Court held that the FDIC's interest in an asset acquired from a failed bank could not be diminished by alleged "agreements" not disclosed in the failed bank's records. *Id.* at 450. *See also* 12 U.S.C. § 1823(e)(1).

Plaintiff's counsel should have revealed whether Plaintiffs could allege the existence of a written document memorializing a joint venture between Peoples First and Colonial." (Doc. No. 31 at 3).

Plaintiffs filed their Amended Complaint on June 27, 2011(Doc. No. 32). On July 6, 2011, Hancock filed its Motion to Dismiss Amended Complaint with prejudice (Doc. No. 36). On July 8, 2011, Plaintiffs filed a Notice of Voluntary Dismissal without Prejudice (Doc. No. 37). Finding the Notice complied with Federal Rule 41(a), Fed. R. Civ. P., the District Judge dismissed the action without prejudice, denied the Motion to Dismiss as moot, and closed the case (Doc. No. 38). The instant motion, seeking attorney's fees and costs incurred in defending the action, followed.[2] Plaintiffs have filed a brief in opposition (Doc. No. 43). Although Defendant has requested oral argument (Doc. No. 44), the Court sees no need for it. For the reasons set forth herein, it is **respectfully recommended** that the motion be **DENIED.**

## Issues and Analysis

Defendant contends that 1) the applicable loan documents and Florida law provide for an award of attorneys' fees and costs as Hancock is the prevailing party against ORL and the Guarantors; and 2) the Court should award fees and costs against Plaintiffs and their counsel pursuant to the Court's inherent authority to control proceedings. The Court finds no basis to award fees here.

*The "Applicable" Loan Documents*

Hancock contends that the loan documents provide for the recovery of attorney's fees and costs, and, therefore, as the voluntary dismissal makes Hancock the prevailing party under Florida law, it is entitled to such an award. While the Court does not take issue with the general principle that

---

[2] During the pendency of the motion, the Court issued an Order to Show Cause why the action should not be dismissed due to an inadequate showing of diversity jurisdiction (Doc. No. 45). Defendant's responded to the motion (Doc. No. 46) with sufficient information to provide a jurisdictional basis for the Court to resolve the present dispute, and thus the show cause Order is discharged.

-5-

a contractual attorney's fee provision can support an award in a diversity suit on the contract, here, as noted by Hancock in its motion:

> The premise of Plaintiffs' Complaint was that Hancock was liable for Colonial Bank's alleged breaches and misrepresentations because Colonial Bank and Peoples First (Hancock's alleged predecessor) were involved in *an express and/or implied "joint venture" agreement* to "receive interest payments from ORL." (Doc. No. 2 ¶¶ 26, 28, 29).

(Doc. No. 39 – emphasis added). As set forth in the procedural history above, the entire suit rested on the existence of a joint venture agreement, and the lack of a writing establishing the joint venture agreement was the basis for the Court's dismissal, with leave to amend to allege its existence. Thus, the Court dismissed the action not pursuant to any written contract, but due to the *absence* of any written contract. There was no adjudication of *any* issue regarding the terms of any loan document.

Even if the Court were to find that the terms of the loan documents were nonetheless applicable, the provisions cited do *not* provide for fees under the instant circumstances. The documents provide, in pertinent part:

> *Cost of Collection*. *Upon BORROWER'S default* and where LENDER deems it necessary or proper to employ an attorney *to enforce collection* of any unpaid balance of this Note or *to otherwise protect its interest hereunder*; then BORROWER agrees to pay LENDER'S reasonable attorney's fee (including appellate costs, if any) and collection cost. Liability for reasonable attorney's fees and costs shall exist whether or not any suit or proceeding is commenced.

See Exhibits "B" and "W" to Amended Complaint (emphasis added).

> Section 32: Reimbursement of Attorneys' Fees and Expenses. If the Mortgagee becomes a party to any action *wherein the Mortgagee must establish or defend the validity or priority of this Mortgage*, or if the Mortgage should incur expenses (including attorneys' fees) *in connection with the enforcement of this Mortgage, the Note, the Agreement* or any other instrument or document collateral thereto, the Mortgagor shall reimburse the Mortgagee for any and all such costs or expenses, together with interest thereon at the Default Rate from the date such costs and expenses are incurred, on demand, and all of said amounts, including interest, shall constitute indebtedness secured by this Mortgage to the extent permitted by law.

See Exhibit "C" to Amended Complaint (emphasis added).

> 1. The undersigned promises and guarantees to Lender the full prompt and faithful payment, performance and discharge by Borrower of each of the provisions, covenants, warranties, agreements and conditions of said Loan Documents to be performed by said Borrower….
> 2. In the event Borrower shall fail to make any payment of principal or interest or other sums due under said Note or said Mortgage or any of said Loan Documents when and as the same shall be due and payable, Guarantor will forthwith make such payment upon demand by Lender.
> 3. Guarantor agrees to and shall indemnify and save harmless Lender from all costs and expenses, including reasonable attorney's fees, that *may be incurred by lender in connection with the collection or enforcement of said Note or said Mortgage or any of said Loan Documents hereof.*

See Exhibits "D" and "G" to Amended Complaint (emphasis added).

> The Borrower shall reimburse the Lender on demand for, and shall indemnify and hold the Lender harmless from and against, all such costs and expenses paid by the Lender and all other costs and expenses (including the fees and disbursements of the Lender's counsel) of every kind incurred by the Lender in connection with … *the enforcement of any of the Loan Documents, the protection of the Lender's rights in the Collateral and the defense of any claim or counterclaim asserted against the Lender by the Borrower or any third party that relates to the Land and Improvements or the Collateral*, .... Any amount paid or advanced by the Lender under this Section or otherwise under this Agreement or the Security Documents to preserve or protect the Lender's interest in the Collateral, shall bear interest until paid at the rate provided for under the particular Loan to which the expense amount relates or the highest rate permitted by law, whichever is less. The Borrower's obligations under this Section shall survive the payment in full of the Loans and the termination of this Agreement.

See Exhibit "J" to Amended Complaint (emphasis added).

These provisions of the loan documents apply to attorney's fees incurred by the Lender "upon [Plaintiffs'] default" or "to enforce collection" or "protect the Lender's rights in the Collateral." Here, there is no showing of default, and no claim by the Lender to enforce the documents or pursue collection. Even read liberally, provisions for the assessment of "collection costs" cannot support a finding that Hancock is entitled to attorney's fees in the present context.

*Inherent Authority*

Hancock next contends that the Court should assess fees and costs against Plaintiffs and their counsel pursuant to the Court's inherent authority. As noted in the motion, the Court has inherent authority to manage its affairs and sanction parties or counsel for conduct that abuses the judicial process. *See F.J. Hanshaw Enterprises, Inc. v. Emerald River Dev., Inc.,* 244 F.3d 1128, 1136 (9th Cir. 2001) (describing, *inter alia*, the federal courts' "ability to address the full range of litigation abuses through their inherent powers."); *see also Chambers v. NASCO, Inc.,* 501 U.S. 32, 45-46, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991). The touchstone for an award of fees under the Court's inherent authority is intentional misconduct and courts have the power to sanction parties, lawyers, or both for engaging in same. *Chambers, supra,* 501 U.S. at 44-45; *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006). The Court may tax attorneys' fees and costs "when [the client, attorney, or both] has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," *Byrne v. Nezhat,* 261 F.3d 1075, 1106 (11th Cir. 2001) (internal quotation omitted), or may otherwise impose sanctions for failure to comply with court orders or the Federal Rules of Civil Procedure, *Zocaras v. Castro*, 465 F.3d 479, 490 (11th Cir. 2006).

Here, Plaintiff contends that fees should be awarded as Plaintiffs and their counsel had no objectively reasonable factual or legal basis to pursue the claims alleged in the Complaint and Amended Complaint. Instead, Hancock asserts, the claims were pursued to cause unnecessary delay and increase the cost of litigation. The Court is unconvinced.

Hancock contends, without any evidentiary support, that Plaintiffs knew that Hancock was "preparing to file a lawsuit against certain of the Plaintiffs" and "[r]ather than properly address[ing] the claims of Hancock...Plaintiffs and their counsel decided to unnecessarily delay Hancock's lawsuit and cause a needless increase in the cost of litigation by filing their lawsuit against Hancock. . ." (Doc. No. 39). Even if the Court were to credit what Plaintiffs "knew," there is nothing that says that one

must wait to be sued before filing one's own claim. The pendency of this suit did not impair Hancock's ability to go forward with its own suit (or counterclaim, if warranted and if jurisdiction were present). Moreover, *all* lawsuits, by their very existence, "increase the cost of litigation." The Court rejects the implication that Hancock is somehow entitled to attorney's fees based merely on its status as Defendant.

To the extent Hancock is claiming that Plaintiffs had no factual or legal basis under Rule 11, Federal Rules of Civil Procedure, to bring this claim, the Court notes that a sanctions motion under inherent authority is not a substitute for compliance with the safe harbor provisions of Rule 11. Pursuant to Rule 11(c)(2), the motion for imposition of Rule 11 sanctions must be served but must not be filed if the challenged claim is withdrawn within 21 days after service. Here, Plaintiffs voluntarily dismissed their Amended Complaint, as the Rules allow, a mere two days after the Motion to Dismiss the Amended Complaint was served. Such prompt withdrawal is consistent with the purpose of the safe harbor provision and belies any contention that Plaintiffs and their counsel were vexatiously prolonging the litigation.[3]

The remainder of the motion is no more than a rehash of the Motion to Dismiss. Even if Hancock were absolutely correct in its position on the lack of merit of the lawsuit, however, that is not enough to establish the requisite bad faith. Under our court system, a plaintiff is entitled to bring an action that turns out to be without merit and, although he may be liable for costs under Rule 54, absent a statutory or contractual ground for fee shifting, he is not liable for his opponent's attorney's

---

[3]The Court is aware that the District Court, in denying the Motion for Enlargement of Time, noted: "A pre-suit investigation by Plaintiff's counsel should have revealed whether Plaintiffs could allege the existence of a written document memorializing a joint venture between Peoples First and Colonial." (Doc. No. 31 at 3). This comment, however, is not, as Hancock implies, a finding that sanctions should be imposed pursuant to Rule 11. Indeed, pursuant to the terms of the rule, the Court could not make such a determination without providing notice and a reasonable opportunity to respond. Rule 11(c)(1), Fed. R. Civ. P.

fees. *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598, 602, 121 S.Ct. 1835, 1839, 149 L.Ed. 2d 855 (2001) ("In the United States, parties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser.") The imposition of attorney's fees as a *sanction* requires more than just asserting a position that turns out to be wrong. Hancock has provided no basis for the Court to conclude that Plaintiffs ill-fated suit was brought in bad faith or for malicious or improper purposes.

## Conclusion

For the reasons set forth above, it is **respectfully recommended** that the motion be **denied.**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on September 26, 2011.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy